## STATE OF MICHIGAN

## IN THE CIRCUIT COURT FOR THE COUNTY OF KALAMAZOO

PEOPLE OF THE STATE OF MICHIGAN,
        Plaintiff,

vs

JEFF EDWARD TITUS,
        Defendant.

Case No. D02000166-FC

Hon. **ALEXANDER C. LIPSEY**

**FILED**

AUG 1 8 2014

9TH JUDICIAL CIRCUIT
COUNTY OF KALAMAZOO
KALAMAZOO, MICHIGAN

## DEFENDANT'S MOTION FOR RELIEF FROM JUDGMENT

Michigan Innocence Clinic
University of Michigan Law School
David A. Moran (P45353)
Caitlin M. Plummer (P78086)
Imran J. Syed (P75415)
Rebecca Eisenbrey (Student Attorney)
Kathleen McNeill (Student Attorney)
Alejandro Montenegro (Student Attorney)
Jesse Stricklan (Student Attorney)
**ATTORNEYS FOR DEFENDANT**
701 S. State St.
Ann Arbor, MI 48109
(734) 763-9353

## INTRODUCTION

Defendant Jeff Titus, by his attorneys and student attorneys of the Michigan Innocence Clinic at the University of Michigan Law School, asks that this Court set aside his conviction and order a new trial, pursuant to MCR 6.501 *et. seq.*, and states the following:

1. After a jury trial in the Kalamazoo County Circuit Court presided over by the Hon. Philip D. Schaefer, No. 02-000166-FC, Mr. Titus was convicted on July 19, 2002, of two counts of first-degree premeditated murder and two counts of felony-firearm.

2. On August 19, 2002, Judge Schaefer sentenced Mr. Titus to life in prison without parole for the murder counts, with an additional two years for the felony-firearms counts. He is serving that sentence at the Lakeland Correctional Facility in Coldwater, Michigan.

3. Mr. Titus appealed by right, and the Michigan Court of Appeals affirmed on February 19, 2004. *People v Titus*, unpublished opinion per curiam of the Court of Appeals (Docket No. 243642). The Michigan Supreme Court denied his application for leave to appeal on November 22, 2004. *People v Titus*, unpublished order of the Supreme Court (No. 126303). Mr. Titus filed a petition for a writ of habeas corpus in the federal district court. That petition was denied, and the Sixth Circuit affirmed the denial. *Titus v Jackson*, unpublished opinion of the Eastern District of Michigan, issued June 24, 2009 (No. 06–10770); *Titus v Jackson*, unpublished opinion of the Sixth Circuit, issued December 20, 2011 (No. 09-1975). This is Mr. Titus's first motion for relief from judgment.

4. Mr. Titus was represented during preliminary matters and at trial by William Fette, and he was represented on direct appeal and in federal court by Peter J. Van Hoek.

5. All of the issues in Mr. Titus's current Motion for Relief from Judgment are being presented for the first time.

2

## FACTUAL SUMMARY

6. On November 17, 1990, Doug Estes and Jim Bennett were each shot through the back at close range and killed in the Fulton State Gaming Area near the boundary of Mr. Titus's property. No eyewitnesses saw the shooting occur. However, several witnesses stated that they heard a rapid succession of gunshots around 4:30 p.m.

7. Mr. Titus was hunting all day with Stanley Driskell 27 miles away near Battle Creek, on land belonging to his friends Gerald and Eloise Shepard. Just before dusk, he shot a deer. Mr. Titus and Mr. Driskell concluded their day of hunting at around 6:00 p.m. and drove the approximately 40 minutes back to Mr. Titus's home.

8. Upon returning home after dark, the two men noticed police lights at the back of Mr. Titus's property. Mr. Titus spoke with the investigating officers and offered access to his land for police vehicles. He then went to the home of his neighbor, Patricia Burnworth, where he spoke with her and her daughter, Bonnie Huffman, about the incident.

9. Officers at the crime scene noticed that one of the victims' weapons was missing. They performed a cursory search on the night of November 17th. On the morning of November 18th, two officers again searched for the missing weapon: the performed a quasi-grid search of the area within a 50- to 60-foot radius of the area where the victims' bodies had been found. No weapon was recovered.

10. On November 19, Mr. Titus contacted the Kalamazoo County Sheriff's Department to report that he had found a shotgun lying near a tree limb on the forest floor at 8:05 a.m. when he was going to check his traps.

11. Detective Bruce Wiersema of the Kalamazoo County Sheriff's Department, who was in charge of the homicide investigation, responded to Mr. Titus's call. Because the gun was

3

found 125 feet from where the bodies were located, and because he was aware of the limitations of the search performed the previous morning, Detective Wiersema found nothing suspicious about Mr. Titus's report.

12. When police spoke with Patricia Burnworth a few days after the incident, she confirmed that Mr. Titus had visited her between 8:00 and 9:00 p.m. on November 17.

13. On November 28, 1990, Detective Wiersema and Detective Royce Ballett spoke to the Shepards to confirm that Mr. Titus was at their farm when the killings occurred. Eloise Shepard confirmed that Mr. Titus and Mr. Driskell had been hunting on her property all day and had left the farm at approximately 6:00 p.m. on November 17 (some 90 minutes after the shootings in the Fulton Game Area).

14. Detective Ballett also administered a polygraph test of Mr. Titus, which he concluded indicated that the latter was truthful in his account of the events.

15. Believing Mr. Titus's alibi to be solid, **the detectives cleared him as a suspect**. soon after, the case went cold.

16. In 2000, the Kalamazoo County Sheriff's Department cold case unit reopened the case. Despite the lack of physical evidence tying him to the crimes, and despite the detectives' suspicion that a single shooter could not have killed the two men, the cold case team turned back to Mr. Titus. Relying primarily on comments he had made in the intervening years, the prosecution charged Mr. Titus with the double homicide.

17. At trial, the prosecution relied almost exclusively on witnesses' accounts of Mr. Titus's general demeanor. All evidence connecting Mr. Titus to the murder was circumstantial.

18. The prosecution posited that Mr. Titus's uncontrollable territoriality prompted him to leave the Shepards' farm near Battle Creek, speed home, and rush to the back of his

4

property to surprise any hunters who might have trespassed on his land; that when he discovered Mr. Estes and Mr. Bennett, he marched them into the Fulton Gaming Area and shot them both; and that after this alleged execution, he stole the decedents' deer and hid one of their weapons, drove back to Calhoun County, picked up Mr. Driskell, and returned to the scene of the crime as though nothing had happened.

19. Because of their age and their diminished mental capacities, the Shepards were unavailable to testify in support of Mr. Titus's alibi at trial. Neither Detective Wiersema nor Detective Ballett was called to testify about the Shepards' statement, and Detective Wiersema was not called to testify about the discovery of Mr. Estes's weapon.

20. At trial, Bonnie Huffman testified that Mr. Titus arrived at her mother's house—and was thus near the scene of the crime—around 5:00 p.m. on November 17, 1990. Mr. Titus's trial counsel did not highlight the discrepancy between her report and that given by her mother both in 1990 and at trial.

21. Mr. Titus was convicted of two counts of first-degree murder and two counts of felony-firearm and sentenced to life in prison without the possibility of parole.

22. After Mr. Titus's conviction, Detective Royce Ballett and Detective Bruce Wiersema, both of whom participated in the initial investigation, approached the undersigned attorneys seeking their assistance in exonerating Mr. Titus. Detectives Ballett and Wiersema believe that Mr. Titus is innocent and that the Cold Case Team and the prosecution committed a grave injustice when they charged and prosecuted him in 2002.

23. In late 2013, the undersigned attorneys learned that Detective Sergeant Richard Mattison of the Kalamazoo County Sheriff's Department had determined that the angle of the bullet trajectories and the positioning of the victims made it likely that different shooters

5

shot each man, and that he had discussed this potentially exculpatory evidence with the his superiors on the Kalamazoo County cold case team and their FBI consultants during the 2000 investigation.

## GROUNDS FOR RELIEF

I.    **Jeff Titus is entitled to a new trial on the basis of ineffective assistance of counsel for trial counsel's failure to call witnesses to corroborate Mr. Titus's account, and for appellate counsel's failure to raise this issue on appeal.**

24. As explained fully in the accompanying memorandum, Mr. Titus's trial counsel was ineffective for failing to call witnesses, including the two detectives who originally investigated the murders, to corroborate his alibi testimony and his account of finding the weapon. His appellate counsel was ineffective for failing to raise these errors on appeal. These errors were prejudicial to Mr. Titus because it is reasonably likely that he would not have been convicted had trial counsel presented credible testimony from police witnesses in support of his alibi and his account of finding the weapon.

II.   **Jeff Titus is entitled to a new trial because trial counsel was ineffective for failing to adequately establish the timeline of events on the day of the shooting, and appellate counsel was ineffective in failing to raise this issue on appeal.**

25. As explained more fully in the accompanying memorandum, Mr. Titus's trial counsel was also ineffective for failing to establish, through cross-examination of prosecution witnesses and argument, that the timeline of events made it impossible for Mr. Titus to have been anywhere near the Fulton Game Area at the time of the shootings. Appellate counsel was ineffective in failing to litigate this issue on direct appeal.

III.  **Jeff Titus is entitled to a new trial on the basis of a due process violation because the prosecution failed to disclose exculpatory evidence to the defense.**

26. As explained in the accompanying memorandum, Detective Sergeant Richard Mattison of

6

discovered and discussed exculpatory evidence with the Kalamazoo County Cold Case team: after analyzing evidence collected during the original investigation, Detective Mattison concluded that a single perpetrator could not have shot both Doug Estes and James Bennett. Detective Mattison presented this conclusion to his superiors, who brought it to the attention of FBI consultants working on the case. The police or prosecution did not provide this information to the defense. The State's failure to inform the defense of a detective's conclusion that the victims' injuries were likely not inflicted by a single shooter constitutes a *Brady* violation and requires relief from judgment.

## RELIEF REQUESTED

For all of these reasons, explained more fully in the accompanying memorandum, Jeff Titus respectfully requests that this Court hold an evidentiary hearing on the claims presented in this motion and, after that hearing, vacate his judgment of conviction, and order a new trial.

Respectfully Submitted,

**MICHIGAN INNOCENCE CLINIC**

David A. Moran (P45353)
Attorney for Defendant

Caitlin M. Plummer (P78086)
Attorney for Defendant

Imran J. Syed (P75415)
Attorney for Defendant

Rebecca Eisenbrey
Student Attorney for Defendant

Kathleen McNeill
Student Attorney for Defendant

Alejandro Montenegro
Student Attorney for Defendant

Jesse Stricklan
Student Attorney for Defendant

Dated: August 18, 2014