UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JEFF TITUS,

              Petitioner,                         Case No. 2:18-cv-11315

v.

                                                                Paul D. Borman

NOAH NAGY,                            United States District Judge

              Respondent.

_____/

## ORDER DENYING PETITIONER'S MOTION FOR EMERGENCY BOND

This is a habeas corpus case under 28 U.S.C. § 2254.  Currently before the Court is petitioner Jeff Titus's motion for emergency bond.  (ECF No. 13.)  For the reasons given below, the motion is denied.

## I.  Background

Petitioner is serving a life sentence without the possibility of parole for two counts of first-degree murder.  The convictions arose from the fatal shooting of two men at a state game area in 1990.  As explained by the state court,

> [t]he victims were not hunting together, but were found near one another, both shot in the back, through their hunting licenses, from close range.  The bodies were found in a section of the game area adjacent to defendant's property.  There were no eyewitnesses to the incident; however, the prosecutor presented a parade of witnesses who testified with respect to incriminating statements made by defendant, incriminating acts, and other actions undertaken by defendant in regard to hunters on or near his property.

*People v. Titus*, No. 243642, 2004 WL 316427, at *1 (Mich. Ct. App. Feb. 19, 2004) (unpublished).

Initially, no one was charged in the case, but years later, a cold-case team re-opened the case, and Petitioner was charged with the murders.  The prosecution's theory at Petitioner's jury trial in Kalamazoo County Circuit Court was that Petitioner was the lone shooter.  The defense theory was that Petitioner was miles away at the time of the crime.

On July 19, 2002, the jury found Petitioner guilty of two counts of first-degree, premeditated murder, Mich. Comp. Laws § 750.316(1)(a), and two counts of possession of a firearm during the commission of a felony, Mich. Comp. Laws § 750.227b.  On August 19, 2002, the trial court sentenced Petitioner to two years in prison for the felony-firearm convictions, followed by two concurrent life sentences without the possibility of parole for the murder convictions.  The Michigan Court of Appeals affirmed Petitioner's convictions on direct review, *see Titus*, 2004 WL 316427, and on November 22, 2004, the Michigan Supreme Court denied leave to appeal.  *See People v. Titus*, 471 Mich. 920 (2004).

Petitioner subsequently filed a petition for the writ of habeas corpus in which he challenged the sufficiency of the evidence on the murder charge and his trial attorney's failure to introduce evidence that another individual admitted involvement in a similar murder.  This Court denied the petition after concluding

that there was sufficient evidence to support Petitioner's convictions for premeditated murder and that Petitioner had failed to establish ineffective assistance of trial counsel. *See Titus v. Jackson*, No. 06-10770, 2009 WL 1803209 (E.D. Mich. June 24, 2009) (unpublished). On December 20, 2011, the United States Court of Appeals for the Sixth Circuit affirmed this Court's decision. *See Titus v. Jackson*, 452 F. App'x 647 (6th Cir. 2011).

In June of 2014, Detective Sergeant Richard Mattison signed an affidavit in which he states that he was a member of the cold case team that re-opened the investigation of the murders. He reached the conclusion that a single shooter would not have been able to shoot both victims. In reaching this conclusion, he noted that the victims were found fifteen to seventeen feet apart and that the bullets had penetrated their spinal columns at a perpendicular angle. The cold case team, however, did not document his conclusion, and he did not discuss his conclusion with Petitioner's trial or appellate attorneys. *See* Affidavit of Richard Mattison, Pet. for Writ of Habeas Corpus, Appendix A, ECF No. 6-1, PageID. 43-44.

On or about August 18, 2014, Petitioner filed a motion for relief from judgment in the state trial court. He claimed, among other things, that the prosecution had violated his right to due process by failing disclose Detective Mattison's conclusion that two shooters committed the murders. The trial court rejected Petitioner's claims and denied Petitioner's motion on April 24, 2015. The

3

Michigan Court of Appeals affirmed the trial court's decision, *see People v. Titus*, No. 329770, 2017 WL 1788261 (Mich. Ct. App. May 14, 2017) (unpublished), and on September 12, 2017, the Michigan Supreme Court denied leave to appeal. *See People v. Titus*, 501 Mich. 865 (2017).[1]

Petitioner then requested permission from the Sixth Circuit Court of Appeals to file a second or successive petition for the writ of habeas corpus. The Sixth Circuit granted the motion in part and denied the motion in part. The Sixth Circuit stated that Petitioner could not pursue a second or successive petition on his claim that trial counsel had failed to interview Detectives Roy Ballet and Bruce Wiersema, but that Petitioner could raise his claim about Mattison's two-shooter theory. *See In re Jeffrey Titus*, No. 18-1142 (6th Cir. Apr. 25, 2018) (unpublished).

On April 27, 2018, Petitioner commenced this case. (ECF No. 1.) He claims that the State violated his right to due process, as set forth in *Brady v. Maryland*, 373 U.S. 83 (1963), by failing to disclose Detective Mattison's conclusion that two shooters committed the crime.

On July 19, 2019, the parties stipulated that the Court should postpone its disposition of the habeas petition so that the Conviction Integrity Unit of the Office of the Michigan Attorney General could investigate Petitioner's case and determine

---

[1]   Michigan Supreme Court Justice Bridget Mary McCormack did not participate in the decision because of her prior involvement in the case.

4

whether there was clear and convincing evidence that Petitioner was wrongfully convicted.  (ECF No. 11.)  On September 30, 2019, the Court entered an order in which it postponed disposition of the habeas petition and closed the case for administrative purposes.  (ECF No. 12).  On April 8, 2020, Petitioner filed his motion for emergency bond.

## II.  Analysis

### A.  Petitioner's Motion, the State's Response, and Petitioner's Reply

The basis for Petitioner's motion for emergency bond is the coronavirus disease (COVID-19).  According to Petitioner, ninety-three inmates and several staff members at the Lakeland Correctional Facility where Petitioner is incarcerated have tested positive for COVID-19, and three inmates have died from the virus. Petitioner asserts that he is at high risk of contracting COVID-19 because he is sixty-eight years old and he recently recovered from a month-long respiratory infection, which requires him to use a rescue inhaler two times a day.  Petitioner contends that social distancing is not possible in prison and that protective gear is limited. Consequently, he seeks release from prison on his own recognizance and without a cash bond because he is indigent.

Plaintiff proposes to stay with his bed-ridden mother at her home in Battle Creek, to wear an ankle monitor, and to have weekly contact with a state parole officer if the Court grants his motion.  He maintains that he is not a danger to the

community and that there is no threat of flight.  He also agrees to a reassessment of the conditions of his release when COVID-19 is no longer a possible lethal threat.

The State opposes Petitioner's motion on grounds that Petitioner has not alleged a substantial claim of law in his habeas petition and that the COVID-19 pandemic is not an exceptional circumstance as applied to Petitioner.  The State also points out that Michigan Governor Gretchen Whitmer and the Director of the Michigan Department of Corrections (MDOC) have established protocols to protect prisoners and prison officials from contracting and spreading COVID-19.

In reply, Petitioner contends that the precautionary measures ordered by the Governor and the Director of MDOC are not being followed.  Further, according to Petitioner, the possibility that an aging and innocent person such as him might die in prison before he can be exonerated is an exceptional circumstance warranting release on bond pending a decision on his habeas petition.  He urges the Court to take steps to ensure that he lives long enough to have a full and fair opportunity to have his constitutional rights vindicated.

### B.  Legal Framework and Application

The Court is sensitive to Petitioner's concerns and to the particular risks that COVID-19 poses to incarcerated individuals.  At the same time, the Court is mindful that Petitioner has been convicted of a serious crime and is serving a life sentence without any possibility of parole.  He is now attacking his convictions in a collateral

proceeding.  As such, "a greater showing of special reasons for admission to bail

pending review [is] required . . . than would be required in a case where [the]

> applicant had sought to attack by writ of habeas corpus an incarceration
> not resulting from a judicial determination of guilt.  In this kind of case
> it is therefore necessary to inquire whether, in addition to there being
> substantial questions presented by the appeal, there is some
> circumstance making this application exceptional and deserving of
> special treatment in the interests of justice.

*Aronson v. May*, 85 S. Ct. 3, 5 (1964) (citations omitted); *see also Nash v. Eberlin*,

437 F.3d 519, 526 n.10 (6th Cir. 2006) (stating that "[t]he district court may release

petitioners on bail if there is a 'substantial claim of law' and 'the existence of "some

circumstance making [the motion for bail] exceptional and deserving of special

treatment in the interests of justice" ' ") (quoting *Lee v. Jabe,* 989 F.2d 869, 871 (6th

Cir. 1993) (quoting *Aronson,* 85 S.Ct. at 5)) (second alteration in original).

"'Since a habeas petitioner is appealing a presumptively valid state conviction,

both principles of comity and common sense dictate that it will indeed be the very

unusual case where a habeas petitioner is admitted to bail prior to a decision on the

merits in the habeas case." *Lee*, 989 F.2d at 871.  As a practical matter, motions for

bond will be denied in most habeas proceedings, because there will be few occasions

when a petitioner can meet the *Aronson* standard.  *Dotson v. Clark*, 900 F.2d 77, 79

(6th Cir. 1990).

Petitioner admits that he has not yet been exposed to the coronavirus, and he

has not demonstrated that the State is unwilling or incapable of protecting him by

7

taking precautionary measures.   The Director of MDOC, in fact, has issued a
memorandum in which she asserts that MDOC is taking many steps to protect staff
and prisoners from the spread of COVID-19.   The Director's memorandum outlines
precautionary measures that staff should take to prevent the spread of COVID-19.
Among other things, these precautionary measures include:   developing isolation
areas for the placement and treatment of prisoners who (i) have tested positive for
COVID-19, (ii) are under investigation for having COVID-19, or (iii) have had close
contact with known-positive COVID-19 individuals; the wearing of protective gear;
the screening of individuals entering correctional facilities; and social distancing.
*See* Answer Opposing Petitioner's Emergency Motion for Bond, Appendix B, ECF
No. 15-3, PageID. 3188-3189.

Governor Whitmer also has established certain protocols to mitigate the
spread of COVID-19 among state prisoners and individuals who work in state
prisons.   Executive Order 2020-29 requires MDOC to continue the risk-reduction
protocols already in place and implemented in its facilities.   These protocols include:
screening persons entering and departing facilities; restricting visitors; limiting off-
site appointments; developing and implement protocols for inmates with COVID-19
symptoms; providing personal protective equipment for staff; stringently cleaning
areas and surfaces; ensuring access to personal hygiene products; practicing social

distancing; and minimizing crowding.   *See* Answer Opposing Petitioner's Emergency Motion for Bond, Appendix A, ECF No. 15-2, PageID. 3184-3186.

Furthermore, the court decisions on which Petitioner relies are distinguishable.  Unlike the petitioner who was released on bond in *Puertas v. Overton,* 272 F. Supp.2d 621 (E.D. Mich. 2003), Petitioner is not in dire health, suffering from severe coronary disease, or required to follow a life-preserving regimen for an aggressive form of cancer.

Petitioner's case is in a different procedural posture than two other cases on which he relies.  *See United States v. Knight*, No. 5:18-cv-20180 (E.D. Mich. Mar. 24, 2020), and *United States v. Kennedy*, No. 5:18-cr-20315 (E.D. Mich. Mar. 27, 2020).  Although the defendants in those cases were released from custody due to their risk of contracting COVID-19 while in custody, Knight was detained on a charge that he violated the conditions of supervised release, and a supervised release violation hearing is set for April 28, 2010.  Kennedy is waiting to be sentenced on July 28, 2020.

Petitioner's case also is distinguishable from *Clark v. Hoffner*, No. 2:16-cv-11959 (E.D. Mich. Apr. 8, 2020), a case in which a habeas petitioner was released on bond due to the threat of COVID-19 at the Lakeland Correctional Facility.  In that case, the District Court had already found substantial merit in the petitioner's habeas claim and concluded that there was evidence of actual innocence.

9

Additionally, the petitioner had abided by all conditions of bond when he was previously released, and after the Sixth Circuit ordered the District Court to reverse its order granting release on bond, Wayne County's Conviction Integrity Unit investigated the case and was prepared to recommend that the petitioner be completely exonerated or given a new trial.

Unlike the Clark case, this Court has not yet adjudicated Petitioner's *Brady* claim, nor determined that Petitioner has made a strong showing of actual innocence. Additionally, the State's Conviction Integrity Unit has not yet completed its investigation or determined whether Petitioner was wrongfully convicted.  Thus, this case is not in the same posture as Clark's case.

### III.  Conclusion

For all the reasons given above, the Court concludes that, even assuming Petitioner has stated a substantial claim in his habeas petition, the contention that he may become ill with COVID-19 at some future time does not create an exceptional circumstance warranting release on bond.  The Court, therefore, denies Petitioner's emergency motion for bond.

<div style="margin-left:40%">
s/Paul D. Borman\
PAUL D. BORMAN\
UNITED STATES DISTRICT JUDGE
</div>

Dated: April 21, 2020