UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JEFF TITUS,

    Petitioner,                               CASE NO. 2:18-cv-11315

v.                                           HON. PAUL D. BORMAN

NOAH NAGY,

    Respondent.

_____

**STIPULATION TO ALLOW AMENDMENT TO THE PENDING PETITION TO ADD A CLAIM AND TO AN UNCONDITIONAL WRIT ORDERING A NEW TRIAL AND TO TITUS' IMMEDIATE RELEASE**

IT IS HEREBY STIPULATED AND AGREED by and between the parties hereto that:

1. On November 17, 1990, Doug Estes and Jim Bennett were shot at close range and killed while hunting in the Fulton State Game Area in Fulton, Michigan, in Kalamazoo County.

2. On July 19, 2002, following a jury trial in the Kalamazoo County Circuit Court presided over by the Hon. Philip D. Schaefer, Mr. Titus was convicted of two counts of first-degree premeditated murder, MCL 750.316(1)(a), and two counts of felony-firearm, MCL 750.227B-A.

3. On August 19, 2002, Hon. Philip D. Schaefer sentenced Mr. Titus to life in prison without parole for the murder counts, with an additional mandatory two years for the felony-firearm counts.

4. On April 27, 2018, after an unsuccessful direct appeal, a habeas petition, and a state post-conviction motion, Mr. Titus submitted a second/successive habeas petition in this Court after being authorized by the United States Court of Appeals for the Sixth Circuit to do so.

5. On September 30, 2019, by stipulation of the parties, this Court stayed adjourned disposition of Mr. Titus' petition so that the Michigan Department of Attorney General's Conviction Integrity Unit (CIU) could conduct an investigation.

6. The CIU confirmed that there was a previously undisclosed file in the original Kalamazoo County Sheriff's Office homicide file. This file contained approximately 30 pages relating to an alternate suspect, Thomas Dillon. Dillon was a serial killer who was convicted of killing multiple hunters and outdoorsmen. He was arrested in 1993 and ultimately pleaded guilty to five counts of first-degree murder in Ohio in order to avoid the death penalty. He was also a suspect in a Pennsylvania outdoorsman murder that remains open to this day.

7. The undisclosed file also contained Ohio police reports indicating that Dillon borrowed two guns from two co-workers to take hunting on November 17th. He returned the firearms sometime after November 17th, telling each individual that he shot a deer with their gun, and in one case he failed to return the barrel he had borrowed (telling the owner that it was inadvertently thrown away). The victims in the instant case were killed with two different forms of ammunition – one was shot with a buckshot and the other with a slug.

8. The undisclosed file also contained Ohio police reports that illustrate that Dillon shot one deer which was tagged at the annual deer hunt at the Ravenna Arsenal in Ravenna, Ohio at 11:20am on November 17, 1990. Dillon was last checked in at noon at the Ravenna Arsenal. Dillon would have had enough time to drive from Ohio at noon to the murder site and commit the murders.

9. The undisclosed file also contained a handwritten note on Grand Traverse County Prosecutor letterhead written to KCSO Detective Wiersma in 1993, and forwarding a news article about Thomas Dillon.

10. The undisclosed file also contained references that Helen Nofz, a witness at trial, identified a car seen in close proximity to the murders that matched a car owned by Dillon's wife.

11. The undisclosed file contained a report indicating that KCSO Detective Wiersema had taken Helen Nofz to Ohio where she identified Thomas Dillon in a live lineup. The CIU investigation further determined that both Nofz and her son, Derek, were taken to Ohio and both independently identified Thomas Dillon in the line-up, as the man they saw in the ditch on November 17, 1990.

12. The Kalamazoo County Prosecutor's Office file did not contain any of the documents relating to Thomas Dillon.

13. The CIU ultimately collected and confirmed a variety of relevant and material information identifying Dillon as a suspect:
    a. The FBI had conducted surveillance of Thomas Dillon and documented occasions when Dillon would drive hundreds of miles from home.
    b. Dillon picked up his shell casings and left no evidence at any of his homicide scenes.

    c. One of the killings to which Dillon pleaded guilty occurred on November 10, 1990 – exactly one week prior to the FGA deaths. He killed another deer hunter eleven days after the instant case on November 28, 1990 (this latter incident represented the only one of Dillon's murders not occurring on a weekend).

    d. Dillon's Ohio cellmate told the FBI that Dillon admitted he had once killed two hunters standing close together in a county where no one could prove he had been. He signed an affidavit for Mr. Titus' counsel and confirmed his statements in an interview by the CIU investigators.

    e. The CIU investigation discovered that the man seen in the ditch, identified at Dillon, told Ms. Nofz that he was driving his wife's car.

14. The parties therefore stipulate that the Michigan Department of Attorney General, representing the Respondent in this matter, is agreeing to allow Mr. Titus to supplement the habeas petition presently pending before this Court to add the new *Brady* claim, as detailed above, and is expressly waiving any statute of limitations defense, exhaustion defense, procedural default defense, or any other potential defenses that could be raised to the claim.

15. The parties further stipulate that the suppressed evidence was material and that the State's failure to turn over to the defense the evidence about Thomas Dillon violated *Brady v. Maryland*, 373 U.S. 83 (1963).

16. The Michigan Department of Attorney General's Office and Mr. Titus further stipulate that Mr. Titus is entitled to an unconditional writ of habeas corpus granting him a new trial based on a claim of newly discovered *Brady* evidence, as detailed in this stipulation.

17. The parties therefore further stipulate that Mr. Titus should be released from Michigan Department of Corrections custody forthwith pursuant to the unconditional writ.

18. By entering into this stipulation, the parties agree that the Michigan Department of Attorney General is not admitting to any facts or legal conclusions other than those presented in this stipulation.

IT IS SO STIPULATED.

*/s/ David A. Moran*
Attorney for Petitioner Titus
Michigan Innocence Clinic
701 S. State St.
Ann Arbor, MI 48109
(734) 763-9353
morand@umich.edu

*/s/ John S. Pallas*
Attorney for Respondent Nagy
Assistant Attorney General
Criminal Trials and Appeals Division
525 W. Ottawa St.
Lansing, MI 48909
(517) 335-7650
pallasj@michigan.gov

DATED:  February 21, 2023